Case number 243051, the National Republican Senatorial Committee et al. versus the Federal Election Commission et al. Oral argument not to exceed 20 minutes per side. Mr. Francisco, you may proceed for the appellants. Good afternoon. Mr. Chief Judge and may it please the court, I'd like to reserve four minutes for rebuttal. Your Honors, but for Colorado too, the coordinated party expenditure limit would be dead on arrival. The FEC's only theory is that they're needed to prevent individual donors from laundering donations to candidates through coordinated party expenditures in exchange for official action, what I'll call its quid pro quo by circumvention theory. But that's already prohibited by other laws and they've got no evidence it's ever happened, which is why the Supreme Court rejected that same theory in McCutcheon. The only real issue then is whether Colorado too directly controls. And it doesn't for two reasons. First, the statutory regime and the facts have both changed. So just like Buckley didn't directly control in McCutcheon, Colorado too doesn't directly control here. Second, as Colorado too itself makes clear in footnote 17, it doesn't control our separate as applied challenge, which focuses on the application of the law to the core political speech in our own advertisements. All Colorado too held was that the law had some valid applications. It didn't hold that they all were. So counsel, on that last point, Colorado too doesn't invoke Salerno, so it's not quite clear what they mean by facial versus as applied. I mean, do you think it should be assumed that all they were doing was saying there is one or two applications of this statute that are valid and therefore we reject a facial attack and allow as applied challenges to everything else? Your Honor, I don't think you have to assume anything. I think if you look at footnote 17, and in particular the second paragraph of footnote 17, the second paragraph of footnote 17 makes quite clear that the most that the court is saying is that the law is constitutional as applied to simply paying the candidates bills. But it is also quite clear in saying that it's not addressing one way or another whether it's constitutional as applied to the party's own speech. And if I could read that footnote, because it is quite critical to our as applied challenge, here's what the court says in that second paragraph. The party appears to argue that even if the party expenditures provision is justified with regard to coordinated expenditures that amount to no more than payment of the candidates bills, the limitation is facially invalid because of its potential application to expenditures that involve more of the party's own speech. And then the court went on to say, but the party does not tell us what portion of the spending falls in one category or the other or otherwise lay the groundwork for its facial overbreath claim. So what the court was quite clearly saying is that we don't need to address whether this law is constitutional as applied to the party's own speech. And that's the crux of our as applied challenge. It applies to ads that we run, that we pay for, and that by law have to say paid for by us. So even if you thought that Colorado II directly controlled the facial challenge, and respectfully I don't think that it does, Colorado II itself makes clear that it doesn't control our as applied challenge and instead in evaluating the as applied challenge you have to apply the entire corpus of Supreme Court case law. For your as applied challenge, do you have to point to a specific ad that you wanted to run that was going to bump up or exceed the limits? No, Your Honor. The difference between an as applied and a facial challenge is a facial challenge says basically the law is unconstitutional in all applications. And an as applied challenge, we're saying that it's not, we're not arguing that it's invalid in all applications, we're arguing that it's invalid in some applications. And in particular, the category of applications that cover our own speech as reflected in the ads that we run, pay for, and have to disclaim as our own when we run those ads. And so what that means is that you've got to apply the entire corpus of Supreme Court case law. And McCutcheon, in fact... Isn't that 95% of the party coordinated expenditures? Well, Your Honor... In ads and communications? It is certainly a large percentage of them. And wouldn't that make, ruling on that, make the law, the limits over broad, the statutory limits over broad? I think it arguably would, Your Honor, except that Colorado 2 was clear in that footnote that I cited to you, that in Colorado 2, the parties didn't actually make a facial overbreath claim. That's why the court was criticizing the plaintiffs in that case for not laying the groundwork for a facial overbreath claim. Had they laid that groundwork and had the Supreme Court actually rejected the facial overbreath claim, I would have a much more difficult argument here on my as-applied challenge. But the second paragraph of footnote 17 makes quite clear that the court wasn't resolving that argument because it wasn't laid the proper groundwork had not been laid in its... But assume you've laid the proper groundwork now, I guess, is the question I would have, is it for us to do it or the Supreme Court? I may agree with you wholeheartedly, and the question is, who decides to steal from my chief? And would that be us or the Supreme Court? I think it would clearly be you because we're not bringing, we're not even bringing in a facial overbreath claim here when it comes to our as-applied challenge. We're not claiming the statute's overbroad. We're simply claiming it's unconstitutional in a set of applications. Yes, it's a set of applications that covers a wide percentage of applications, but that's not fundamentally different than the Wisconsin Right to Life case, where the as-applied challenge in that case was the typical type of issue ad that the Supreme Court had facially upheld with respect to the broad issue ad in McConnell. And I think the important point is that Colorado II actually makes the as-applied challenge pretty easy, at least in terms of whether Colorado II controls, because Colorado II itself says in that second, in the second paragraph of that footnote, that it's not addressing precisely what we're saying is the scope of our as-applied challenge. So if you then turn to the corpus of the Supreme Court's case law, McCutcheon basically rejected the theory that there... What would be left of Colorado II? I mean, let's just say we agree with you and time has moved on. The facts have shifted. Cruz, McCutcheon, it's a new world. We say Colorado II does not control us. We grant you relief. Five years from now, what case does Colorado II apply to? Sure. We're talking about our as-applied challenge?   So it's basically... A specific example. Like what's a concrete example? Because we would be allowing coordination and advertising. That's your main goal here. I'm just trying to figure out what Colorado II would mean, because we're obviously not going to overrule Colorado II. So what would it mean if we said it doesn't control here? We allow you to march forward with what you're proposing. I'm just trying to figure out what's left of Colorado II. Absolutely, Your Honor. And it's the difference between what the Colorado II footnote distinguishes as paying the candidate's bills versus the party's own So I'll give you some examples. I think last year the DNC spent around $250,000 in coordinated expenditures on things like covering a candidate's travel costs, covering their staff salaries, the other types of things it would cover, you know, paying for the secretary back in the office who's opening up the mail. Those types of things where the candidate is incurring bills and through coordinated expenditures, you're just covering the candidate's bills. That's what the Supreme Court said when it said, you know, it's constitutional as applied to simply paying the candidate's bills. But that is a different category, different in kind than ads, where we're running the ads using our money, making our own decisions at the end of the day, having to disclose that they're paid for by us. I thought we were talking about coordinated expenditures, aren't we? Yes, and coordinated... It's not your decision. It's coordinated. You're coordinating with the candidates, right? Well, Your Honor, at the end, we are coordinating with the candidates, but at the end of the day, we are making the final decision on how to spend the money. The record is quite clear on that. If that's the case, it would be independent expenditures, wouldn't it? No, Your Honor. It would be allowed under Colorado I. No, Your Honor. The difference between a coordinated expenditure and an independent expenditure is with coordinated expenditures, while we have final decision-making authority and we ultimately decide whether or not to spend the money and ultimately the ad has to say that it's paid for by us, we're also coordinating with the candidate to make sure that it's an effective ad. We don't want to run an ad that the candidate thinks is going to be counterproductive, but it's still ultimately our final decision. An independent expenditure, on the other hand, we can't have any communication or contact with the candidate at all about that ad. And so when you turn to the theory that the FEC is actually putting forward here, it is the one that the Supreme Court rejected in McCutcheon. This notion that a donor is laundering his donation through the party into coordinated communications onto the candidate in exchange for official action. And the Supreme Court made clear that that was wildly implausible and it gave three basic reasons that fully apply here. The first is that it's unlikely to work because the donor actually has to relinquish control of the money to the party. The second is that it's prohibited by other things. It's prohibited by the earmarking rule, which doesn't allow a donor to target a donation through the party onto someone else. It's prohibited by the base limits on the amount that the donor can donate to the party, which are set low enough to prevent them from being an effective bribe. And if you don't think they're low enough, they can be set even lower. It's prohibited by the disclosure requirements, which allow the public and the FEC to follow the money. And it's prohibited by the bribery laws, which make all of this a crime. And the coordinated spending limits are on top of all of that. And the third reason that the Supreme Court gave for rejecting that theory is because that type of quid pro quo by circumvention or coordination is no longer needed given the rise of super PACs. As the Supreme Court said, if you're a donor who wants to influence a candidate, you're much better off donating $10 million to that candidate's favorite super PAC, rather than trying to launder a $40,000 donation through the party into coordinated communications onto the candidate as part of an indictable criminal enterprise. And that's precisely why, the fact that this is so implausible, is precisely why my friends on the other side cannot point to a single example of this type of quid pro quo by circumvention in American history. And it is not for the lack of opportunity. Existing law creates... So McCutcheon and Cruz refer to strict scrutiny as the possible test we should apply. I don't think that was used in Colorado too. So what do we do with what do we do with those sort of mixed signals? What standards should we be applying? Your Honor, we, for purposes of our argument in this court, we concede that the closely drawn scrutiny standard applies, the intermediate standard. That's the standard the court ultimately applied in McCutcheon, and it's the standard ultimately applied in Cruz. It doesn't rule out strict scrutiny. It says... It doesn't. It would have been easy to say this is the test we apply. It suggests strict scrutiny could apply. It certainly doesn't, and Your Honor, if we were before the Supreme Court, I would be making a full-throated argument that strict scrutiny should apply. Our argument here is that you don't need to go there because McCutcheon rejected the exact same theory the FDC is putting forth here under the closely drawn standard, and so it fails here for the very same reasons that it failed in McCutcheon. And as I was saying, their absence of evidence doesn't reflect an absence of opportunity. This type of quid pro quo by circumvention could occur in the 28 states that don't impose any coordination limits at all between parties and candidates. It likewise could occur under existing coordinated spending limits. I could make a $40,000 donation to the political party, earmark it to my favorite Senate candidate, and the party could use it on behalf of that candidate in the form of coordinated expenditures. And coordinated expenditures are allowed up to, you know, something like $4 million for some Senate campaigns. It's also permissible under the... I have a question about the sort of evolving Supreme Court precedent. So on the quid pro quo side, you know from McDonnell and some other cases, the court seems to be looking a little bit more closely at what actually constitutes corruption, political corruption, and has sort of raised the bar to prove quid pro quo corruption, I think. Is that something we should be considering as we sort of look at the solution of the case law that would apply here and what the FEC has to show to establish the appearance of quid pro quo? Absolutely, Your Honor. The major innovation of cases like McCutcheon and Cruz is that they rejected the interest that Colorado II was itself predicated upon. Colorado II was quite clear in saying, this is footnote 18 of Colorado II, was quite clear in saying that they were not addressing an asserted interest in preventing quid pro quo corruption. It specifically said it was not addressing that interest because it was sufficient to simply address the interest in preventing undue influence over candidates that come along with making big donations. And that really explains just about the entire analysis in Colorado II. You can understand why, for example, the earmarking rule is not going to be effective if your goal is to prevent undue influence. Everybody knows that big donors get undue influence and everybody knows who the big donors are regardless of whether they're earmarking that donation to a particular candidate. But once you focus it down on quid pro quo corruption, the entire analysis changes. Because the earmarking rule is enormously effective in preventing quid pro quo corruption because it makes it very difficult to route the money from the donor to the party into a particular candidate's pockets. And that's why in McCutcheon the Supreme Court treated the presence of the earmarking rule as so critical to its analysis. It rejected hypothetical after hypothetical after hypothetical for amongst many other reasons the fact that the hypothetical would be barred by the earmarking rule itself. Mr. Francisco, I was wondering, you've made arguments to why we should not follow Colorado II using McCutcheon as an example. Of course, in that case it was the Supreme Court itself that was deciding not to follow Buckley. Do you have any examples of any lower courts, courts of appeals, in any area where you had a Supreme Court decision and the lower court distinguished it as maybe being a facial challenge versus an as-applied challenge, one of your arguments, or maybe that the rationale that the Supreme Court used had been undermined by later Supreme Court decisions? Do you have any example of a lower court doing that? Well, first of all, I want to be very clear, Judge Bush, in that our argument that Colorado II is not directly controlling is only relevant to our facial challenge. As to our as-applied challenge, I think Colorado II itself leaves open the door to the as-applied challenge on the face of the opinion itself, which then means not that Colorado II is irrelevant, it just means it's one of many cases that this Supreme Court, that this Court is bound by. After all, you're bound by all of the Supreme Court's decisions. Isn't that impacted by your acknowledgement that virtually all of the independent expenditures are on media and media buys, which is exactly, it seems to me, it effectively makes your as-applied challenge identical to your facial challenge, doesn't it? No, Your Honor, it doesn't. I acknowledge that it covers a broad amount of what would be picked up by the facial challenge, but it's Why is it not the same? Because, look, even assuming that it covers 95% of the applications, 95% isn't 100%. The definition of a facial challenge is that a law is unconstitutional in all applications. The definition of an as-applied challenge is it's not unconstitutional in all, but some. Maybe just to spell out, because I was thinking about the same thing, to spell it out and make sure we're grasping it. Are you trying to say that Colorado II makes a distinction between cash-coordinated expenditures? In other words, cash is the party just paying the bills directly, whereas you can almost think of advertising as in-kind-coordinated expenditures. The party creating the ad works with the candidate they're supporting. I'm trying to, I'm like Judge Stranz, I'm trying to figure out what the category is that's left out, and I can't figure that out. I don't think I'd call it cash contributions. I think it focuses on how much of a core implication does the application have for speech. Paying for office space isn't really like... Yeah, paying for office space. If I were before the Supreme Court, I would be arguing that that's unconstitutional too. That's the facial challenge across the board. In terms of the as-applied challenge, yes, I'm willing to acknowledge that paying for somebody's office space, paying for the candidate's travel, paying their staff salaries, that doesn't have nearly the implication for free speech that paying for ads that we ultimately decide to run and pay for in coordination with the candidate does, and that's the second category. Didn't the court below, wasn't there discussion of 99.7% to 100% of NRSC's independence expenditures are categorized as media and media by expenditures? So why does that not show that there is an almost complete overlap, if you did a Venn diagram, between your as-applied and your facial challenge? Your Honor, I think... Doesn't that, let me just throw in the last thing, and doesn't that throw us into what we all know? The prerogative to overturn a decision belongs to the Supreme Court, not to this court. So how, if you are positing the same sort of use of the funds has been determined, why doesn't that mean that there's nothing left of Colorado II? Your Honor, I think that that would be an extraordinarily powerful argument and a difficult one for me if I didn't have that second paragraph of Colorado II in footnote 18, which quite clearly, I don't think there's any other reasonable way to read it, but quite clearly draws that distinction between paying the candidate's bills on the one hand, and application to the party's own speech on the other, and it's just as clear in saying that it's only addressing the one category. Can I ask you, if we don't rely on the second paragraph of this footnote as much as you would like us to, do you mind answering Judge Bush's questions about, that you didn't have time to answer, about examples of, if we're not making as applied distinction based on the second paragraph of that footnote, what other examples you would point us to for an erosion or a factual change that would give us the authority, you're asking? I can give you an example on the other side. Judge Posner's decision in, I think, the Kahn case, that he said we weren't going to get in front of the Supreme Court. Do you have any example of a court doing the opposite? So I'll give you two, Your Honor. My best example is the Supreme Court, not a McCutcheon case. Remember, in McCutcheon, it upheld the very aggregate limits that were struck down in Buckley. But what the Supreme Court was quite clear in saying is that it wasn't overruling Buckley. It was saying that Buckley didn't directly control. And because Buckley didn't directly control, it simply treated Buckley as one of a line of Supreme Court cases that governed its decision. I get that that's the Supreme Court, not a lower court. I don't have great cases out of the lower courts. The best thing I can point to is the Libertarian Party National Committee case. Well, that ultimately upheld the law. It conducted a full-blown analysis in light of the statutory changes. That would have been totally unnecessary if it were simply completely bound by the prior decision. It could have written a one-paragraph decision. But I want to emphasize, that's our facial challenge. The as-applied challenge, I think, is governed. I don't think I'm overreading the second paragraph of footnote two. I think that's what it says. So the more general point on the facial challenge, though, is that the 2014 amendments did fundamentally change this statutory regime. Congress amended the Federal Campaign Act in 1974, but they did not repeal it in response to Colorado II. Your argument is because Congress made amendments in 2014 to allow greater contributions to party conventions, to party headquarters, for election matters, that somehow that undermines or that shows an intent by Congress to change the scheme. But I see it as totally opposite. I see Colorado II having been rendered, and then Congress knows about it, but rather than repeal it, they amend it. They modify it. And I think that shows an intent of Congress to continue the limitations. Am I wrong on that? Your Honor, I don't dispute that Congress intended to continue the limitations. What my argument is, is that they changed the statute in a way that made it different than the statute that Colorado II addressed. Okay, but not the provisions that you're arguing about. Well, that was the same in McCutcheon as well. No, the limitations are specific as to party conventions, party headquarters, election issues. We're not talking about coordinated campaign ads or media ads, which is what you're attacking here. Well, Your Honor, respectfully, I would disagree with that, and if I can explain. What the 2014 amendments do is they triple the size of the base limits. Those three instances. Other than that, Congress has basically reaffirmed the act. Well, I agree Congress reaffirmed the act. The question is whether the First Amendment renders what Congress has worked here unconstitutional. Okay, but you're not attacking the three new exceptions. No, Your Honor, what we're doing is arguing is that those three exceptions undercut the interest in preventing quid pro quo corruption. And if I could explain. Well, you're going back to the rationale of Colorado II, and I don't think that we can overrule a Supreme Court decision because the rationale no longer makes sense. And I think that's what your argument, the first argument you have, is that the statutory regime has changed, the facts have changed, and therefore we are not bound by Colorado II. I disagree with you. I think even though the rationale may make no sense of Colorado II, maybe it made no sense when it was rendered, but maybe it makes no sense now, we're still bound by the holding, at least I think we are. And if you have some authority that says we are not bound by the holding of Supreme Court cases, I'd like to see it. Sure, and Your Honor, again, I think you're right to focus that on the facial challenge because that's our argument with respect to the facial challenge. And I understand your view on Colorado II. I think that my best case is the McCutcheon case, which is how they treated Buckley. I totally get that. I totally get that. But I think another way to look at it is when the Supreme Court issues a decision, it's not an advisory decision for all circumstances and all times. It's addressing a case or controversy. If it upholds a statute and later the statute changes, it's now a different statute and a different case. It's not that Colorado II is irrelevant. It is a Supreme Court case. You are bound by the Supreme Court cases, but not just Colorado II. You're bound by the Supreme Court cases. Once the court changes the statute in a material way, then it's a new case and you've got to take all of the court's cases and figure out, all right, what's the answer under this new statute. And if I could explain why I think the amendments were so important. Briefly. Yes. By tripling the size of the base limits to $120,000, including for legal expenditures, it creates the precise same possibility of quid pro quo by circumvention. I can donate $120,000, your market, to my favorite Senate candidate for his legal expenditures in a close race. That frees up $120,000 for him to use for other things, including running ads. It's no different than putting cash in the campaign's pocket, yet the law allows that and there's no evidence that it's ever given rise to the type of corruption that my friends seem to be concerned about. Thank you. We'll hear from the government. Good afternoon. Good afternoon, Chief Judge Sutton. Your Honors, may it please the court, my name is Jason Hamilton and joined by my colleague, Mr. Blake Wyman, we represent the FEC. This court should decide the certified question in the Commission's favor for two reasons. First, vertical stare decisis precludes this circuit from overruling the decades of Supreme Court precedent set by Colorado II, where the Supreme Court explicitly held that limits on coordinated party expenditures are constitutional. Secondly, even if this circuit were to assume the mantle of the Supreme Court, limitations on coordinated party expenditures remain constitutional because they are closely drawn to serve a long-standing, sufficiently important government interest. Mr. Hamilton, what's the FEC's position as to the meaning of note 17, the second paragraph? Is it just a nullity, doesn't have any effect in terms of giving an ability to have an as-applied challenge to the statute? An as-applied challenge to the statute is not foreclosed, but in the particular circumstances of this case, the as-applied challenge that the petitioners bring is one and same, factually and legally, with their as-applied challenge would be allowed then under the FEC's position of the statute by virtue of that footnote. One that did not overlap entirely with the facts. But be concrete. Yeah, give us an example. What would be concrete examples? Because just as you want us to follow Colorado II, we've got to follow, the footnote has some meaning, what would be examples? I understand, Your Honor, and we would follow the footnote in that we are not saying all as-applied challenges are precluded, but we do not... Be abstract, but I'm talking about in this concrete, what would be concrete examples that could be challenged after Colorado II? In the example here, something that did not fall under our party-coordinated communications, which is what the petitioners are raising, and is one and same with a coordinated party expenditure. So everything covered by the regulation can't be challenged? No, it can be, but again it has to be factually distinct, and here in this particular instance, we're not. What the as-applied challenge is doing is repackaging the facial challenge, saying that Congress is precluded from placing limitations. But what if it was just one example? So they challenged the entire regulation, but what if they had presented a specific ad that they wanted to run, and they said they just wanted to run it by the candidate, yes, no, is this a good idea? No other input. That is still coordination. So that as-applied challenge is still barred by Colorado II? Because that would be a coordinated party expenditure, your honor, in relation to what is a party... I don't understand what is left of the footnote then. There isn't. So the footnote is meaningless? In the context of what has evolved to be a party-coordinated communication... But they were talking about as-applied challenges to party-coordinated communications. So you have to give an example of a party-coordinated communication that could be susceptible to an as-applied challenge. It's the entire point of this suit. Your response is there's an as-applied challenge outside the context of party coordination, but their point was there could be some types of party coordination that would be susceptible to an as-applied challenge. Our position, your honor, is that an as-applied challenge is acceptable. That a coordinated party expenditure in this instance, however, is the exact same as a party-coordinated communication. Aren't you reading footnote 17 out of Colorado? And if you're reading it out, is that any different than them asking us? You're just saying follow all of it except footnote 17. How can we do that? What we're saying is follow Colorado II, which Colorado II said coordinated party expenditures are not a violation of the First Amendment of the Constitution. And as is applied challenge... And a facial attack. Yes. In a case involving payment of bills, correct? Correct. And the footnote says this case involves payment of bills and we're not precluding an as-applied challenge on other grounds. So why doesn't it, why does it then preclude the challenge here? If you were talking about the payment of bills, for example, that could be a narrow exception here. But that's the one the court adjudicated there, right? Correct. In that example for Colorado II, but what we're looking at the facts and challenge raised by the petitioner here is going specifically to party-coordinated communications. They are asking to, quote, speak with their own voice. That is the same issue that your sister circuit in Enright Gow, the on-bank Fifth Circuit said is not an exception for the as-applied rules and declined to follow in that case, saying that it was factually and legally the same issue that the Supreme Court had held in Colorado II. I mean, I understand your argument, but, I mean, we're trying to figure out, you know, what's in bounds for us to adjudicate here. And, I mean, you've agreed that they adjudicated a case about paying bills. Now, some of the reasoning here, you know, is broad, but they don't adjudicate expenditures that are, you know, for ads. So just why is it that we're precluded from reaching that issue when the court did not adjudicate that specific question? Again, you could reach an as-applied challenge in theory, but not under the circumstances that have been brought here before. This as-applied challenge in regards to the subset of party-coordinated communications is another name for coordinated party expenditures. And coordinated party expenditures have been facially upheld. If there is a hypothetical, which my colleague was not able to provide of what would necessarily be a concrete example, then perhaps we could discuss it further. But in this, respectfully, your Honor. Are we on the same page what a facial challenge means? So there's over-breath, which this is not, as I understand it. And under Salerno, a facial challenge means we're going to uphold the statutes against this challenge as long as there's one constitutional application. That's what that means. It doesn't mean a lot for future as-applied. So that's why this question is so important, to figure out concrete examples of what the footnote leaves open to challenge. I understand that, your Honor. But we don't have a concrete example in the context of this case of what is not a party-coordinated communication. Go outside this case. Anything relating to the reg or the statute, go for it. All the examples that pop to mind? Did the Fifth Circuit come up with a way of explaining concrete examples of as-applied challenges you could still bring? The majority? Yes. They broadly said there were, but not in that particular case. No, but like did they spell it out? Like how they would look? What would be an example? I believe so. But honestly, your Honor, I don't quite remember the exact details of that exception. I was focused more on the, as in the context of the coordinated party expenditures. Is the key here related to the factual admissions or agreements in this particular case? My understanding of Colorado II is that all nine justices agreed that the party paying a candidate's media bills would be virtually indistinguishable from a party contributing to that candidate. We have a record here in which there is a determination that effectively 99.7 and 100 percent of their independent, of NRSC's independent expenditures are categorized in that media by expenditures. But the as-applied challenge does not make any distinction among those based on the degree of coordination involved. So it seems to me that on that factual basis, it necessarily sweeps into the case before us the spending in Colorado II that Colorado II explicitly held was tantamount to a contribution and thus could be constitutionally limited. So in that particular factual scenario, aren't we in complete overlap between their facial and their as-applied challenges? Absolutely, your Honor. There is no difference based on the facts that you have cited. You This is not a Venn diagram between party-coordinated communications and coordinated party expenditures. It is an eclipse in all but name. And if that's the case, what is left of Colorado II? Colorado II is controlling facially and in the particular circumstances of this case precludes this circuit from overruling that decision. As I noted, the sister circuit in was faced with a facial challenge as well as an as-applied challenge where the party wanted to speak with its own voice. And the Court noted that regardless of what it thought of the merits of the decision of the Supreme Court, it was bound by Colorado II. Colorado II remains the controlling law on coordinated party expenditures, your Honors. Opposing counsel has made frequent citation to other cases. McConnell v. FEC. McCutcheon v. FEC. Citizens United. Cruz. All v. FEC. And none of those cases deal with the issue of coordinated party expenditures that we are dealing with here. The only case to specifically address it is, pardon me, the case of Colorado II. And the Supreme Court has declined to revisit that issue. Henri Gou, the Court declined to certify in here that particular matter. Now there may have been subsequent decisions, but as I said, none of them go to the point of the issue here of coordinated party expenditures. If facts change dramatically, we can't consider that in terms of how we should apply the past precedent? If there were factual changes, one could perhaps make an argument. What's the evidence in the record of modern-day corruption by political parties coordinating with, potentially coordinating with candidates, their own candidates? Thank you, Your Honor. I believe in our brief at page 41 through 43, we cite recent examples. There is the matter of the crypto mogul, Sam Bateman Freed, who admitted that he gave funding and monies to the Democratic Party to secure a more favorable regulatory environment. The 2017 tax bill, there was reporting indicating that donors to the RNC said that the piggy for the second time of Senator Menendez, where the facts indicate that money went to the Democratic Party in New Jersey that found its way to him in exchange for an obligation by him. And again, the record is replete with other examples, going back to the originator in some ways of President Nixon and the dairy lobby, and the Supreme Court relying on legislative facts. Can I ask you, in your brief, you point out the fact that there are fewer competitive races these days and all the money goes to those races. I didn't quite understand the significance of that point vis-a-vis the... It was going to an allocation of the funding and that there is less competitive races and more money is now being selectively funneled to those particular races of... Why is that a problem vis-a-vis the appearance of corruption? The appearance of corruption because more donors might be considered as viewed as giving directly to those candidates or attempting to gain the obligation of those... Because more donors doesn't make it quite difficult to say one person is corrupting the process? I'm sorry, I didn't hear the first part of you. More donors, doesn't that make it, that almost to me disproves the point. In other words, there's more donors so it's harder to show that one person is somehow tainting this process through their contributions. Not necessarily, Your Honor. Congress has set a limit for what it thought could be the So one person, as we've noted in the statute, can be viewed as corrupting an individual by obligating... There's a lot of them, it just makes it much less likely. They also could be working in conjunction, Your Honor. There is that possibility of individuals have an overlapping interest and all contribute knowing that money is going to circumvent the base limits and go to the candidate for their obligation. So I understand your hypothetical, but Congress was concerned both with an individual level and as well as an aggregate level and set the funding amount for that. What do you do about the rise of super PACs? So there's a, I mean compared to 2000 when the Colorado case was decided, the political system is very different and there are hundreds of millions of dollars, billions of dollars probably being spent by other groups. So are parties the real concern these days? Are we concerned about sort of money and politics and corruption? Well, if we talk about money and political parties, we cited in our brief that the political parties have gained in fundraising from $1.1 billion to $2.6 billion and that's after the decision in Citizen United. So there does not appear to be any impact on their fundraising ability. And I would also point out the fact that political parties remain unique and at an advantage in comparison to PACs and super PACs and other third parties. They are the only entity by law that is allowed to engage in a coordinated party expenditure. A super PAC in theory could out-raise a national party, but it can never coordinate with the candidate like a political party can. I'm struggling with the idea that factual changes grant this court the authority to overturn Supreme Court authority. Do you have, I'm not familiar with a case that says the facts on the ground are different. That means that a court of appeals gets to take up and resolve or decide to overcome a Supreme Court decision. Are you familiar with a case that says that changes of facts on the ground enable a circuit court of appeals to overrule a Supreme Court case? No, Your Honor. As far as I am aware, there is no such instance. In fact, the Supreme Court of Appeals, there seems to be tension between its rationale and the underlying facts of its subsequent decisions with the precedent. The precedent controls until it specifically says otherwise. And that is something that this circuit itself has recognized repeatedly in Richardson v. Wayne State University, Thompson v. Marietta Education Association, and more recently in Taylor v. Buchanan, acknowledging that it is, quote, for the Supreme Court to tell the court of appeals when the court has overturned its decisions, not the other way around. The facts on the ground so change or the statute be so amended that it's just a different one. I mean, at least McCutcheon indicated that that could be the case and that in that instance it would seem odd for us not to admit that and review it. Your Honor, the facts on the ground have not changed in regards to coordinated party expenditures. But you're acknowledging it could, and if it did, if we decided differently, then we should review it. In theory, the facts on the ground could change. But again, under Supreme Court precedent and stare decisis, no circuit, including this one, could evaluate whether or not there had been a change on the ground in facts or law. Only the Supreme Court can go back and revisit. You're saying the only thing we can do is ask applied challenges. If there was room for an as-applied in this particular instance, yes. But again, based on the particular circumstances of this as-applied challenge, we're not, I'm sorry. You agree in Wisconsin right to life, the Supreme Court basically said, circuit, you got it wrong. We said you could do as-applied, so do as-applied. Yes, Wisconsin right to life did say in those particular circumstances an as-applied challenge is permissible. And the FEC is not saying categorically that an as-applied challenge is precluded under the law. We are saying the circumstances of this particular one, because of the overlap, because the facts and the law are the exact same of the facial challenge, and also the requested relief in this particular instance, the exception would swallow the rule. What the petitioners are asking is to sneak in this as-applied challenge to say there are no coordinated party expenditure limits whatsoever, because a party-coordinated communication is a coordinated party expenditure, Your Honor. Whose burden is it to show the exact specifics of the as-applied challenge here? What the as-applied challenge here is supposed to be? Is it your burden or is it the other side's  It is the other side's burden, Your Honor. The Supreme Court has made its decision and relied upon particular facts and circumstances at the time, gave its rationale, and it is up for the petitioner now to say that that is incorrect or no longer applicable in these particular instances. Do you think there's some possibility that if the statute changed enough that it would allow for fresh review? Suppose that Congress took Justice Thomas' dissent to heart and changed the amounts you could contribute to political parties to a small amount to match the amount you could change to candidates. In that scenario, would the statute have been so fundamentally changed that Colorado, too, would no longer be binding on? Assume they kept the coordination provision in place, too. Yes, Your Honor. If the statute had changed the underlying law or the facts to such a of the facts and law considered at the time under Colorado, too. So, I mean, that's, so don't we at least give de novo review to the question whether there has been such a change in this case? Because, I mean, their point is, you might disagree, you might say they're on the margins, but their point is the statute has been a change, has been changed. The amount, unlimited amounts you can give for legal fees and the other de novo review even under your own concession. There could be the possibility of de novo review if there were sufficient delineation between the facts and law that exist as raised in this particular challenge as to that which were examined by the Supreme Court. But as I have repeatedly said here, there is no daylight between those facts and law. The Supreme Court's decision in Colorado, its rationale, covers across the board in these circumstances. So I thought their point was the amendments allowing unlimited amounts to go to a candidate's attorney's fees show that the interest just simply isn't as strong as it was before that  Your Honor, may I, I see I'm running out of time. May I answer your question, please? Thank you, Judge. The amendments to the 2015 Act that they speak of do not go in regards to coordinated party expenditures, Your Honor. Those went to three very narrow categories, segregated accounts for what can be described as the mechanics and the operations of a national party. They were not designed to be a means for effecting coordinated party expenditures, advocacy for a particular candidate. Basically, they have no bearing, those particular amendments, on the issue before the court here. As one of your colleagues pointed out, they went to matters of holding conventions, buildings, things of that nature. Nothing that involved working hand-in-hand with Well, one was for recounts, wasn't it? Recounts, but again That's pretty candidate-specific, isn't it? No, Your Honor, that's actually Well, by definition, you have a particular candidate who needs a recount. Respectfully, Your Honor, the FEC disagrees with your interpretation of that. It goes to the mechanics of our electoral system. It is saying that money can be used for a recount to ensure When you would use the money for a recount, it would have to be in the context of a contested particular election for a particular candidate. Yes, but that is not advocacy And isn't there a risk of quid pro quo there just as much as there would be for a normal campaign coordinated expenditure? No, Your Honor, we would actually know who the candidate is in that situation that you're benefiting through the coordination. Yes, but I think it's distinguishable in your hypothetical, Your Honor, on the fact that the money set aside for the legal challenge is not meant to go for advocating for the election of that particular candidate. But if you're going for a recount, you are trying to get him elected, aren't you? That is a byproduct of your trying to ensure the integrity of the electoral system, Your Honor. It may turn out in favor of that candidate. It may not turn out in favor of that candidate. But we are ensuring there is funding to make sure there is no question about the validity of the election itself. That money is not being used to say, candidate X should be elected for this position. It's using that money to say, is the process correct? It still gets at the quid pro quo interest. You've got to admit that. There could be in that hypothetical some fungibility of funds, but the amendment as written at that time did not specifically address as to coordinated expenditures, Your Honor. I think perhaps we could find enough hypotheticals where we could stretch things beyond what was the intent of the amendments at that point, which was focused on those three narrow segregated accounts. Real quick, your eclipse, the two circles that are overlapping there, just so I understand, one of them is obviously just coordinated expenditures generally. Is that right? Coordinated party expenditures, yes, Your Honor. And the other is coordinated expenditures for ads. Is that right? More speech related. Already coordinated communication. And we can't change the facts on the ground. We can't look at changed facts on the ground to determine the scope of Colorado River 2, correct? Correct. I'm still looking at this footnote, and it seems to me the court's supposition is exactly the opposite of the one in your Venn diagram. The party is saying, hey, even if these things are valid as to paying bills, there's a ton of invalidity about what the court describes as expenditures that involve more of the party's own speech, kind of sounds like what we're talking about here. And the court says, oh no, we're not going to say it's facially invalid in this case based on those kind of speech expenditures because they haven't laid the groundwork for a facial overbreath, which they say you've got to show that these other expenditures would be substantial. So these other expenditures they're talking about are the ones we're talking about here, as I understand it. And in this footnote, the court is saying there's no facial invalidity here because these same expenditures, the court's not even recognizing that they're substantial. And so it would seem to me that we would have to change the facts on the ground to say, oh, for purposes of our decision, there is an eclipse. The court was saying, for all we know, that there's no overlap at all. And I'm just, I have to, you know, I want to honor this decision. And what's wrong about what I just said? I think, again, Your Honor, it goes to the fact that while this court may look and permit a review of the facts to see if there is daylight between the facts of the as-applied challenge and of the facial challenge in this particular case, there is no daylight. I understand you're wanting to look at that to determine, is there a difference in the facts that would allow us to review this? But there is no difference, as we have discussed here. It is the same controlling fact in law. And then I would go beyond that as well, Your Honor, to say even if there were some means for this court to review the as-applied challenge as somehow being completely different from the facts and law considered and ruled upon by the Supreme Court, the end result of what the petitioner is asking for here is what the court dealt with in deciding in Rehgau. It would eviscerate the Supreme Court's decision. Could well be. I mean, I get that. This would be a... This footnote seems to have the opposite assumption that your diagram has. Absolutely. I get that. Can I ask you about this distinction, at least that your friend is making, between paying the bills of a candidate and the party's speech that can be coordinated. Is it hard to figure out which bucket something goes into in the kind of real life of campaigns? Let's say candidate John Smith has an ad that he really likes and things like that. He's talked to the party about it. Within the limits, that's fine. I wish I could have this ad play 20 times as much as I can afford. Then the party plays it. Now, the party's got to put its name on it, as I understand from your friend, but essentially is playing that ad as its own. Is that paying that candidate's bills? Is that separate speech or is that just kind of splitting hairs that maybe we shouldn't be doing? That is coordinated party expenditure, your honor. The candidate and the party had a communication. It may be a one sentence of, I like that idea, but... We understand it's a coordinated party expenditure, but we're trying to tease out a little bit what is encompassed within the second paragraph of footnote 17 and what the court squarely considered in terms of this kind of paying bills of the candidate versus what your friend here is saying is the coordinated communications aspect. I'm trying to figure out is there just so much overlap that those are hard to be teased out or is there a clear distinction that's workable? I think it's that there is so much overlap. As we cited in our brief and as members of the bench have noted, we have a 95% overlap from the NRSC on what is a party coordinated communication and a coordinated party expenditure. We have a 99% by the NRCC. My friend on the other side could not give you a concrete example of what would fall outside of that overlap. That is on them to prove. If they want an as-applied challenge, they need to show where the daylight is between the facts and law of this case and with the controlling precedent of the Supreme Court. They have not. It is not the FEC's burden to say, in scenario X, Y, and Z, I guess they could do this. If they want the law struck down as unconstitutional, they need to show why. The FEC's position then would be that when there is a coordinated communication and the party pays and puts its name on an ad, that that's tantamount to paying the candidate's bills because it was coordinated. I guess it depends on how we're defining bills here, Your Honor. I don't mean to... In as much as what Colorado II squarely contemplated? For rent, for a storefront, and bills for a radio ad. Those could be different examples here, but what we're dealing with in this case is party-coordinated communications and that's at the heart of this issue, 95 to 99 percent of it going towards radio ads, not buying storefronts or funny little hats. Judge Ray, you had one more question and then we'll hear from Rebuttal. I asked you about the record and you referred me to pages 41 to 43 of your brief. A number of those citations are to newspaper articles that don't appear to be in the record? They should be in the record if I believe correctly in our proposed finding of facts,  There were then citations to your FEC facts. Were those accepted by Judge Cole and put into the record? They were not accepted because they were considered to be legislative facts and because of the unique situation of this circuit hearing it in bank, he did not reject them, but he said it was more appropriate as a matter of first impression for this court to consider those facts in the context of this question. They're not in the record as developed by the district court? In other words, your friend makes a point about this. The record doesn't really have much, if anything, supporting the points. The actual record we received doesn't have much along the lines of what you recited to me. You're saying we're supposed to find those facts? I guess I didn't follow the second part of that. I'm sorry, Your Honor. I didn't mean to over... Then you were supposed to find those? I didn't quite follow the second part. Yes, his decision was that this should be a matter of first impression on the facts for this court. He did not disclaim them? He didn't give us a record. I'm not sure between facts and record what the difference is, but he gave us a record and the points you want are not in that record. Yes, and the facts that we included should be part of that record and are ripe for review by this court. Okay, thank you. We'll hear Mr. Francisco in rebuttal. Thank you, Chief Justice. Your Honors. Got a promotion. Chief Judge Sutton, four quick points, but of course I'm happy to answer whatever questions the court may have. First of all, Wisconsin Right to Life specifically said, quote, courts do not resolve unspecified as applied challenges in the course of resolving a facial attack. Here we not only don't have an unspecified as applied challenge, we actually have a specified as applied challenge that the court in Colorado II said it wasn't resolving. So, I think our as applied challenge is clearly before you. Point two, Judge Bush, my friend suggested that money spent on recounts aren't intended to influence elections. Well, I mean, I think that's facially absurd, but putting that aside, that pot of funds under the 2014 amendments aren't limited to just recounts. It's been applied in all kinds of election related litigation. Think back to 2016 and 2020, where candidates and parties spent enormous amounts of money on ballot access litigation. You could make $120,000 donation to your favorite Senate candidate locked in a very tight race where the recount and election related litigation more generally is most likely. Since money is fungible, that's as good as putting money in his pocket. Third point, my friend concedes that when it comes to our facial challenge that at least in theory, the law and the facts can change enough such that a prior Supreme Court decision isn't directly controlling. He just doesn't think that the laws and the facts have changed enough here. Well, we've already talked about the changes of the law. With respect to the facts, the Supreme Court has quite clearly said that they have changed. This is what it said in McCutcheon. It said that given the rise of super PACs, and here I'm quoting, there should be fewer cases of conduit contributions directly to parties because donors who wish to influence elections or officials will no longer need to attempt to do so through conduit contribution schemes that can be criminally prosecuted. Instead, they are likely to simply make unlimited contributions to super PACs. Not only do we have a change in the law, we have a change in the facts. My fourth point, my friend points to various examples. I think he cited the tax bill, Sam Bankman Freed and the Menendez prosecution. In the interest of full disclosure, my law firm represents Senator Menendez in that case. I'm willing to spot them judging every single example that they cite for the sake of argument even though most of them are based on things like newspaper articles, indictments that didn't result in convictions or that resulted in plea agreements to only a tiny number of the counts in the indictment, many of which didn't even involve quid pro quo corruption. But I will spot them for the sake of this argument every one of their examples. Not a single one of them involves a donor laundering his donation through party-coordinated communications in exchange for official conduct. Not a single one. I think only one of them, the Wisconsin case involving somebody called Shavala, involved coordinated spending at all. And there, the coordinated spending wasn't done by the party. It was done by an independent group that Representative Shavala created for his own nefarious purposes. And the reason they can't cite a single example is because of the reasons the Supreme Court gave in McCutcheon when rejecting the same theory. The theory, this quid pro quo by circumvention theory, is wildly implausible. As to the tax example, I think it shows how absurd the FEC's view of the appropriate scope of these laws is. The notion that a bunch of donors who support the tax bill say we're not going to make donations if you oppose this tax bill, the notion that that is quid pro quo corruption seems kind of ridiculous. I think that's probably why you haven't seen a single prosecution arising out of that factual context. Could you give us a concrete example of where the daylight is as we've been speaking on the as-applied challenge? Yes, Your Honor. Last year, my understanding is the DNC spent around $250,000 in coordinated expenditures to cover things like candidate travel and staff salaries. Those are the types of things that the court was talking about when they said that the law was constitutional when it comes to paying the candidates' bills. They distinguished that from applying the law to the party's own speech. That's what ads are. Ads are the party's speech that they pay for, they ultimately decide to run, and that by law have to say, paid for by the party. That's the daylight. I think it's quite clear that we have a separate as-applied challenge. You presented that in your brief and in the evidence that you presented to the district court, is that correct? Yes, Your Honor. Yes, Your Honor. I think that's clearly the gist of our as-applied challenge. My final wrap-up point is that we're talking about core political speech. Ads run in the middle of the election. This is at the heart of what the First Amendment is meant to protect, and the Supreme Court has made clear that when it comes to core political speech, any error must lie on the side of protecting speech, not suppressing it. We're talking about a law that suppresses core political speech at the time that it's most important, in the middle of an election. When you look at it against that backdrop, I think it's quite clear that things have changed enough since Colorado II that it isn't directly controlling, but at the very least, Colorado II left that door open to our as-applied challenge. In the interest of protecting core political speech under the First Amendment, I would urge the court to walk through that door. Thank you very much to both of you for excellent briefs and ably answering our questions at  We're really grateful for that. It's always good to have terrific attorneys, so thank you. The case will be submitted, and the clerk may adjourn court.